UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-10024-CR-MARTINEZ/SNOW

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DAVAUS L. McCOWN,

    Defendant.

_____

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the Defendant, Davaus McCown's Motion to Suppress Statements and Physical Evidence (ECF No. 13) and Supplement to Defendant's Motion to Suppress Statements and Physical Evidence (ECF No. 17), which was referred to United States Magistrate Judge, Lurana S. Snow, for a Report and Recommendation.  The Defendant seeks to suppress evidence seized pursuant to a search warrant issued by Monroe County Judge Ruth Becker, on the ground that the application supporting the warrant lacked probable cause.  The motion is fully briefed and a hearing was conducted on October 20, 2017.

### I.  FACTS

On August 1, 2017, Monroe County Sheriff's Office (MCSO) Detective Vaughn O'Keefe presented a search warrant application to Judge Becker which contained the following sworn statements:

> On July 10, 2017, a plan was formulated to purchase crack cocaine from a black male identified as Davaus McCown (DOB 12/21/1984). Monroe County Sheriff's Office, Special Operations Unit Detectives Brady, Hill, Blanton, and your affiant (detective O'Keefe) were working in an undercover capacity.  On this date we utilized a Monroe County Sheriff's Office documented Confidential Informant (C.I.)

> The C.I. was met at a pre-determined location. Your affiant searched the C.I. for any contraband. No contraband was located on or around the C.I. Your affiant issued the C.I. $50.00 in pre-recorded currency from my Monroe County Sheriff's Office allocated buy funds to be used on this date.
>
> The C.I. proceeded to 240 Sombrero Beach Road while under observation of detectives. There detectives observed McCown leave apartment 11H of 240 Sombrero Beach Road, verified as his residence through the DAVID system, and meet directly with the C.I. The C.I. exchanged the $50.00 of allocated buy funds for a baggy containing suspect crack cocaine provided to them from McCown. The C.I. was then able to leave the area. McCown then directly returned to his residence.
>
> The C.I. returned to a pre-determined meet location and met with detective Hill and your affiant. There the C.I. turned over to your affiant the suspect crack cocaine. Your affiant again searched the C.I. for contraband with none found.
>
> Detective Brady later processed and weighed the suspect crack cocaine. He did receive a positive field test for the presence of cocaine and an approximate weight of 0.9 grams loose.
>
> On July 14, 2017, a plan was formulated to purchase crack cocaine from a black male identified as Davaus McCown (DOB: 12/21/1984). Monroe County Sheriff's Office, Special Operations Unit Detective Brady and your affiant (detective O'Keefe) were working in an undercover capacity. On this date we utilized a Monroe County Sheriff's Office documented Confidential Informant (C.I.).
>
> The C.I. was met at a pre-determined location. Your affiant searched the C.I. for any contraband. No contraband was located on or around the C.I. Detective Brady issued the C.I. $50.00 of pre-recorded currency from his Monroe County Sheriff's Office allocated buy funds to be used on this date.
>
> The C.I. proceeded to 240 Sombrero Beach Road while under observation of detectives. There, detectives observed McCown meet directly with the C.I. in the vicinity of the apartment. The C.I. exchanged the $50.00 of allocated buy funds for a baggy containing suspect crack cocaine provided to them from McCown. The C.I. was then able to leave the area. McCown then left the area.
>
> The C.I. returned to a pre-determined meet location and met with your affiant. There the C.I. turned over to your affiant the suspect crack cocaine. Your affiant again searched the C.I. for contraband with none found.
>
> Detective Brady later procesed and weighed the suspect crack cocaine. He did a positive field test for the presence of cocaine and an approximate weight of 0.7 grams loose.

(ECF No. 17-1 at 3-4.)

Based on this affidavit, Judge Becker issued a search warrant which authorized MCSO officers to search for and seize cocaine, pre-recorded currency and drug paraphernalia. Id. at 2. The warrant was executed on August 3, 2017. Subsequently, the Defendant was arrested and made post-arrest statements to interviewing officers.

MCSO Detective Vaughn O'Keefe testified that he has served as a law enforcement officer for 12 years and has handled dozens of drug cases. The detective related that the C.I. in this case was not being paid, but was hoping for a legal benefit in return for her cooperation. She provided information about drug dealing by the Defendant and others in his neighborhood, which was corroborated by the two buys described in the warrant application. During the time period between the second buy and the date on which the application was presented, the C.I. told MCSO officers that the Defendant was continuing to deal drugs from his residence. Intermittent police surveillance conducted on that residence indicated drug activity in the neighborhood, but no suspicious acitvity by the Defendant.

## II.  RECOMMENDATIONS OF LAW

In his motion, the Defendant argues that the search warrant application in this case lacks probable cause because the elapsed time of 18 days between the second buy and the presentation of the warrant application rendered the information stale, and because there were no facts which connected the Defendant's residence to the drug transactions. At the hearing, the Defendant also argued that the good faith exception to the exclusionary rule established by United States v. Leon, 468 U.S. 897, 922 (1984), does not apply because the warrant applicataion was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, and the issuing magistrate wholly abandoned her judicial role and became a "rubber stamp" for the police. The Government responds that the warrant application established probable cause for the search and, furthermore, the Leon good faith exception applies.

### A.  General Principles

In Illinois v. Gates, 462 U.S. 213, 238 (1983), the Supreme Court held that in issuing a search warrant, the task of a judge or magistrate is "to make a practical, common-sense decision

whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  In so holding, the Court recognized that search warrant affidavits "'are normally drafted by nonlawyers in the midst and haste of a criminal investigation.  Technical requirements of elaborate specificity once exacted under common law pleadings have no place in this area'".  Id. at 235, quoting United States v. Ventresca, 380 U.S. 102, 108 (1965).  Thus, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.  Gates at 238; Jones v. United States, 362 U.S. at 257, 271 (1960).

Review of the conduct of the police in obtaining and executing a search warrant is controlled by United States v. Leon, 468 U.S. 897 (1984).  In creating what has been called a "good faith exception" to the exclusionary rule, the Court recognized that the rule "operates as `a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved'".  Id. at 906, quoting United States v. Calandra, 414 U.S. 338, 348 (1974).  The Court noted that the articulated purpose of the exclusionary rule never had been to punish the errors of judges and magistrates, and there is no evidence to suggest that judges or magistrates are inclined to ignore or subvert the Fourth Amendment or that "exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate."  Leon, 468 U.S. at 916.  Accordingly, the Court concluded that "suppression of evidence seized pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."  Id. at 918.

The Court noted that in an ordinary case, a police officer cannot be expected to question a magistrate's probable cause determination or judgment that the form of the warrant is technically correct.  However, suppression of evidence seized pursuant to a warrant still might be proper in those rare instances where the officer has no reasonable grounds for believing that the warrant was properly issued.  Id. at 921-923.  Therefore, the Court recognized four situations where a finding of good faith reliance would not be appropriate:

1. Where the magistrate or judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth, as discussed in Franks v. Delaware, 438 U.S. 154 (1978);

2. Where the issuing magistrate wholly abandoned his or her judicial role and becomes a "rubber stamp" for the police, as in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979);

3. Where the warrant is based on an affidavit that is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, as in Brown v. Illinois, 422 U.S. 590, 610-611 (1975); and

4. Where a warrant is so facially deficient, as where it fails to particularize the place to be searched or the items to be seized, that the executing officers cannot reasonably presume it to be valid. Leon, 468 U.S. at 923.

If none of these exceptions applies, evidence seized pursuant to a search warrant later found to be unsupported by probable cause will not be suppressed.

### B. Probable Cause

In the instant case, the Defendant first argues that the time lapse between the two controlled buys from the Defendant and the search warrant application, as well as the lack of nexus between the Defendant's residence and the drugs sold to the C.I., negated probable cause to believe that any currency, drugs and/or paraphernalia would be found inside the Defendant's residence. The parties agree that in determining whether information supporting probable cause has become stale, courts should consider the length of time, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and the nature and function of the premises to be searched. United States v. Bervaldi, 226 F.3d 1256, 1265 (11th Cir. 2000) (quoting United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994). The Bervaldi court noted that when considering the nature of the crime, the Eleventh Circuit has distinguished between criminal activity which is protracted and continuous and that which is isolated. Id. The court also observed that "[r]esidency in a house, like protracted and continuous criminal activity . . . generally is not transitory or ephemeral, but instead endures for some length of time." Id.

5

Regarding the length of time between the last controlled buy and the search warrant application, the Government notes that there is no case which has held that an 18-day time lapse renders the information too stale to support probable cause.  The Government relies on United States v. Green, 40 F.3d 1167, 1173 (11th Cir. 1994), where the court summarily rejected the argument that information pertaining to the last drug buy that was more than one month prior to a wiretap application was too stale to establish probable cause.  As to the nature of the crime, the Government asserts that the two drug buys demonstrate that the Defendant was engaged in the ongoing sale of narcotics.  With respect to the habits of the Defendant, the nature of the items sought and the nature and functions of the premises to be searched, the Government points out that the Defendant engaged in the same conduct during each of the two buys, demonstrating that the Defendant's residence was a "semi-permanent" base of operations for his drug business and was the likely repository for drugs, cash, scales and baggies (all of which were found).

The Defendant argues that the amount of cocaine and cash involved in each of the drug buys was too small to create the inference that drugs or cash would remain with him and that two transactions were insufficient to create a pattern of conduct.  The Defendant also points out that no one observed any drugs or other contraband inside the Defendant's residence, indicating that the drugs sold to the C.I. could have come from somewhere else.

The undersigned agrees with the Defendant that the search warrant application was weakened by these factors.  Nevertheless, considering all of the facts set forth in the application in a common-sense fashion, the undersigned finds that there remained a "fair probability" that drugs, money and drug paraphernalia would be found at the Defendant's residence. Gates, 462 U.S. at 438.

### C. Good Faith Exception

Assuming *arguendo* that the search warrant application lacked probable cause, Leon dictates that the evidence seized pursuant to the warrant should not be suppressed because Detective O'Keefe acted in good faith by obtaining a warrant.  The Defendant argues that two exceptions to Leon apply: (1) the warrant was based on an affidavit that is so lacking in indicia of probable cause

as to render official belief in its existence entirely unreasonable, and (2) Judge Becker wholly abandoned her judicial role and became a "rubber stamp" for the police.

As discussed earlier in this Report, the undersigned believes that the search warrant affidavit set forth probable cause to believe that drugs, cash and drug paraphernalia would be found inside the Defendant's residence on August 1, 2017.  In addition, United States v. Martin, 297 F.3d 1308, 1318 (11th Cir. 2002) held that a court may "look beyond the four corners of the affidavit and search warrant to determine whether [the applicant] reasonably relied upon the warrant," based on a "standard which is focused on a reasonably well-trained officer and is based on the totality of circumstances." Id. (quoting United States v. Taxacher, 902 F.2d 867m 872 (11th Cir. 1990)).  In the instant case, Detective O'Keefe testified that the C.I.'s information about the Defendant's activities had been corroborated by the two controlled buys and that the C.I. also told him that the Defendant continued to deal drugs from his residence during the time period between the drug buys and the search warrant application.  Under these circumstances, there is no basis to conclude that Detective O'Keefe's belief in the existence of probable cause was "entirely unreasonable."

Similarly, there is no evidence in the record to suggest that Judge Becker abandoned her judicial role and acted as a mere "rubber stamp" for the MCSO.  On the record before this Court, the Defendant has established only that another judge might have refused to issue the warrant as lacking sufficient probable cause.  There is no suggestion that Judge Becker failed to read the application or lacked neutrality with regard to the applicant or the Defendant.

Accordingly, the undersigned finds that regardless of whether the search warrant application in this case established probable cause to search the Defendant's residence, the good faith exception to the exclusionary rule applies.  Therefore, the evidence seized pursuant to the warrant, and the statements of the Defendant which followed the execution of the warrant, should not be suppressed.

### III. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that Defendant, Davaus McCown's Motion to Suppress Statements and Physical Evidence (ECF No. 13) and Supplement to Defendant's Motion to Suppress Statements and Physical Evidence (ECF No. 17) be DENIED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

DONE AND SUBMITTED at Key West, Florida, this 23rd day of October, 2017.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

AUSA Daniel Marcet (MIA)
AFPD Stewart Abrams (MIA)